■ In the Matter of ATCO-MIDWOOD ASSOCIATES, Respondent, v SOFIA BENITEZ et al., Appellants. (Proceeding No. 1.) In the Matter of ATCO-MIDWOOD ASSOCIATES, Respondent, v DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Appellant, and SOFIA BENITEZ et al., Intervenors-Appellants. (Proceeding No. 2.) — In two proceedings pursuant to CPLR article 78, *inter alia,* to review a determination of the Department of Housing Preservation and Development of the City of New York (HPD) issued in August, 1983, setting aside a vacate order, the appeal is from a judgment of the Supreme Court, Kings County (Kartell, J.), dated December 22, 1983, which, *inter alia,* annulled the determination, directed HPD to issue a new vacate order requiring the occupants to vacate the premises in question within 20 days, and, upon their failure to do so, permitting petitioner to seek a writ of assistance, transferred all claims for civil penalties or money damages to the Housing Part of the Civil Court, and vacated all prior stays in the proceedings.

Judgment modified, on the law and as a matter of discretion, by adding a provision directing a hearing to determine the extent, if any, of petitioner's responsibility for the deteriorated condition of the premises as of February, 1983 and to determine the equitable relief, if any, to which the tenants are entitled should petitioner be found to be at fault, in whole or in part, for the condition of the premises. As so modified, judgment affirmed, with one bill of costs payable by petitioner to appellant and intervenors-appellants appealing separately and filing separate briefs, and matter remitted to Special Term for the hearing on the afore-mentioned issues, to be held forthwith. Pending hearing and determination of these issues, all stays vacated by Special Term are reinstated and are to remain in full force and effect.

The two buildings in question here, 5110 and 5120 19th Avenue, Brooklyn, are part of a large complex of 11 buildings known as Midwood Gardens, located in the Boro Park section of Brooklyn. All of the buildings were acquired by the principals of petitioner Atco-Midwood Associates (Atco) in 1979. Appellants allege that at the time of Atco's acquisition the 11-building complex was occupied by nearly 700 families, but that as a result of petitioner's deliberate neglect, by 1983 one tenant continued to live in building number 5120 and only seven families remained in building number 5110. According to Atco, the buildings were in very bad shape when acquired and the apartments vacated by attrition were left vacant in order to rid the buildings of a hard-core criminal element. It appears, however, that presently some of the vacated buildings are undergoing extensive renovation, and it is anticipated that condominium units in these buildings will be offered for sale.

In February, 1983, HPD issued "Repair/Vacate" orders against Atco's premises at 5110 and 5120 19th Avenue. Both of these orders directed petitioner to make certain repairs to the buildings, but further found that the buildings were "dangerous to life, and detrimental to the health and safety of the occupants and others and [were] unfit for human habitation" and directed that the tenants vacate the buildings. Atco made no attempt to effect repairs, but commenced article 78 proceeding number 1 against all appellants, seeking, *inter alia,* to enforce the vacate order, on the ground that equity does not require it to repair the uninhabitable premises as it was not economically feasible to make such extensive repairs for the benefit of the few remaining tenants. In their answer to that petition, the tenants asserted, among other things, that equity would not relieve petitioner of its duty to repair those harmful or dangerous conditions which it

had created by its own acts. HPD opposed the petition, also questioning petitioner's good faith in light of previous Housing Court litigation.

In August, 1983, while proceeding number 1 was still pending, HPD rescinded the "vacate" portion of its order on building number 5110, on the ground that it had made certain emergency repairs which rendered the building fit for human habitation. HPD then moved to dismiss proceeding number 1 based upon that rescission. Petitioner, however, commenced proceeding number 2, seeking to rescind the determination to rescind the "vacate" portion of the order as arbitrary and capricious. That proceeding was brought against HPD alone.

Following a hearing on these proceedings in September of 1983, Special Term found that the buildings were unsound and hazardous, and that HPD's rescission had been arbitrary and capricious. This determination is amply supported by the record. The court also determined that both the buildings in question were in need of no less than total rehabilitation, and that it was not economically feasible to direct that petitioner undertake such repairs. While there was also sufficient evidence on the record to support this determination, at the hearing Special Term consistently refused to hear appellants' evidence that petitioner had caused and was responsible for the condition of the buildings. This was error, and Special Term should have also considered the equities of the case with respect to the tenants. Therefore, the case is remitted for a hearing to be held forthwith to determine if, and to what extent, petitioner is responsible for having created the conditions which now require that the buildings be vacated and gutted. If such facts are shown, appropriate equitable relief is to be fashioned for the tenants. Pending the hearing and determination of these issues, all stays vacated by Special Term are reinstated and are to remain in full force and effect. Brown, J. P., Niehoff, Rubin and Eiber, JJ., concur.